**ORAL ARGUMENT HAS NOT BEEN SCHEDULED**

**Record No. 11-1115**
**Consolidated with 11-1129**

_____

IN THE

**United States Court of Appeals**

FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**735 PUTNAM PIKE OPERATIONS, LLC,**
**d/b/a GREENVILLE SKILLED NURSING**
**AND REHABILITATION CENTER**

_____                          **Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD**

_____                          **Respondent.**

PETITION FOR REVIEW OF
NATIONAL LABOR RELATIONS BOARD DECISION AND ORDER
**reported at 356 NLRB No. 138**

_____

**FINAL REPLY BRIEF OF PETITIONER**

**J. Michael McGuire**
**Darryl G. McCallum**
**SHAWE & ROSENTHAL, LLP**
**20 S. Charles Street, 11th Floor**
**Baltimore, MD  21201**
**(410) 752-1040**

**ATTORNEYS FOR PETITIONER**

**October 20, 2011**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... ii

GLOSSARY..........................................................................................iv

I. SUMMARY OF THE ARGUMENT ..................................................1

II. ARGUMENT ....................................................................................3

    A.    THE BOARD IMPROPERLY IGNORED SUBSTANTIAL
          EVIDENCE IN THE RECORD SHOWING THAT THE CHARGE
          NURSES ARE STATUTORY SUPERVISORS .................................3

          1.    The Board Ignored Substantial Evidence in the Record Showing
               that Charge Nurses Exercise the Authority to Discipline
               Subordinates and to Recommend Discipline in the Interest of the
               Center ................................................................................7

          2.    Substantial Evidence in the Record, Ignored by the Board,
               Shows that Charge Nurses Responsibly Direct the Work of
               CNAs Using Independent Judgment ...........................................16

          3.    The Board Ignored Substantial Evidence that the RN Charge
               Nurses Exercise Independent Judgment in Assigning
               the Work of CNAs .....................................................................20

III. CONCLUSION.................................................................................23

CERTIFICATE OF COMPLIANCE....................................................25

ADDENDUM OF PERTINENT STATUTES AND REGULATIONS …………26

CERTIFICATE OF SERVICE .............................................................29

# TABLE OF AUTHORITIES

## Cases

Beverly Enters. Mass., Inc. v. NLRB
165 F.3d 960 (D.C. Cir. 1999) ............................................................... 7, 8

* Cogburn Health Ctr., Inc. v. NLRB
437 F.3d 1266 (D.C. Cir. 2006) ................................................................ 6

*Evergreen New Hop Health & Rehab. Ctr. v. NLRB
65 Fed. Appx. 624 (9th Cir. 2003) .......................................................... 19

*Glenmark Assocs. v. NLRB
147 F.3d 333 (4th Cir. 1998) .......................................................... 22, 23

Healthcare Employees Union, Local 399, Affiliated with Service
Employees Int'l Union, AFL-CIO v. NLRB
463 F.3d 909 (9th Cir. 2006) ............................................................... 6, 7

Honeywell Int'l, Inc. v. NLRB
253 F.3d 119 (D.C. Cir. 2001) ................................................................ 20

Jochims v. NLRB
480 F.3d 1161 (D.C. Cir. 2007) .............................................................. 11

Local Joint Exec. Bd. Of Las Vegas v. NLRB
__ F.3d __, No. 10-72981 (9th Cir. Sept. 13, 2011) ................................. 6

Mid-America Health Care Found. V. NLRB
148 F.3d 638 (6th Cir. 1998) ................................................................. 19

New Jersey Bell Tel. v. NLRB
720 F.2d 789 (3rd Cir. 1983) ................................................................... 3

*NLRB v. Health Care & Ret. Corp. of America
511 U.S. 571 (1994) ........................................................................... 1, 4

---

* Authorities upon which we chiefly rely are marked with asterisks.

*NLRB v. Kentucky River Cmty. Care, Inc.
532 U.S. 706 (2001) ....................................................................4, 5, 14, 16

*NLRB v. Passavant Ret. & Health Care Ctr.
149 F.3d 243 (3d Cir. 1998).......................................................... 9, 10

NLRB v. ResCare, Inc.
705 F.2d 1461 (7th Cir. 1983) ............................................... 14

*Oakwood Healthcare, Inc.
348 NLRB 686 (2006) ............................................ 16, 17, 18, 19, 20, 21

Oil Chem. And Atomic Workers v. NLRB
445 F.2d 237 (D.C. Cir. 1971) ....................................................7, 10, 11

Passaic Daily News v. NLRB
736 F.2d 1543 (D.C. Cir. 1984) ....................................................5

Universal Camera Corp. v. NLRB
340 U.S. 474 (1951) ....................................................7

## Statutes

29 U.S.C. § 152(11) .....................................................19

# <u>GLOSSARY</u>

ADON – Assistant Director of Nursing

CBA – Collective Bargaining Agreement

CNA – Certified Nursing Assistant

DON – Director of Nursing

LPN – Licensed Practical Nurse

NLRA – National Labor Relations Act

RN – Registered Nurse

# I. SUMMARY OF THE ARGUMENT

In <u>NLRB v. Health Care & Ret. Corp. of America</u>, the Supreme Court stated that "whether the Board proceeds through adjudication or rulemaking, the [National Labor Relations Act] must control the Board's decision, not the other way around." <u>NLRB v. Health Care & Ret. Corp. of America</u>, 511 U.S. 571, 580 (1994). The Court in that case rejected the Board's attempt to impose a false dichotomy that made it more difficult for nurses to meet the statutory definition of a supervisor -- a dichotomy between acts taken in connection with patient care and acts taken in the interest of the employer. <u>Id.</u> at 577.

Similarly, in this case, the Board has chosen to ignore substantial evidence in the record showing that the charge nurses at issue are supervisors as that term is defined in section 2(11) of the NLRA. In so doing, the Board – in error- imposes on Petitioner 735 Putnam Pike Operations, LLC , d/b/a Greenville Skilled Nursing and Rehabilitation Center (the "Center" or "Petitioner") a higher standard of proving supervisor status than the NLRA, the Supreme Court, and other Board decisions have required under still binding precedent.

Most glaringly, while attempting to argue that the Center has failed to put forth "tangible examples" of the exercise of supervisory authority by the charge nurses at the Greenville Center, the Board in its Brief ignores numerous examples of disciplinary warnings prepared and issued by charge nurses without first

checking with the Director of Nursing.  The most telling example, completely

ignored by the Board in its Brief, is the instance where RN Charge Nurse Linda

Rodriguez issued written discipline to CNA Thomas Oh, sending him home as a

disciplinary measure after she located him sleeping on the job.  (Transcript,

hereinafter "Tr." 56-58 and Employer ("Er.") Exhibit ("Ex.") 6) (Joint Appendix

"J.A." 0041-0043; J.A. 0250-0276)  The Board's decision to ignore such clear

evidence of supervisory responsibility is consistent with the Regional Director's

blanket refusal to rely on any evidence of supervisory authority exercised by

Center charge nurses who had worked under prior owners of the Greenville facility

(and who continue to work at the Center).  This despite the fact that the testimony

in the record shows that there was no decrease in the supervisory responsibilities of

charge nurses once 735 Putnam Pike Operations, LLC began to manage the Center.

(Decision and Direction of Election at 14-15; Tr. 104-105, 381-385) (J.A. 0504-

0505; J.A. 0072-0073, 0238-0242)

 In addition, while the Board emphasizes both in its Brief and in its

underlying Decision the fact that the DON is "on call" 24 hours a day, 7 days a

week to handle issues in the Nursing Department if necessary, the Board

completely ignores evidence in the record demonstrating that the calls to the DON,

which only occur about once a week, do not deal with disciplinary or other

personnel matters.  Rather, the charge nurses on the 3:00 p.m. to 11:00 p.m., 11:00

p.m. to 7:00 a.m. and weekend shifts prepare disciplinary actions and the DON

does not see them until she comes into work the next day.  (Tr. 100-103, 191-193)

(J.A. 0068-0071, 0126-0128)

In short, the Board's decision to arbitrarily pick and choose which evidence

to rely on and which cases to follow in its analysis makes its finding that the

charge nurses in this case are not supervisors a *fait accompli*.  See New Jersey Bell

Tel. v. NLRB, 720 F.2d 789, 792 (3rd Cir. 1983) (noting "Supreme Court

precedent, Board precedent and common sense all militate against the Board's

decision in this case.").  Thus, as set forth below, given the Board's failure to

consider substantial evidence showing that the charge nurses meet the NLRA's

definition of supervisor, its decision must be reversed and vacated.

## II.  ARGUMENT

### A.     THE BOARD IMPROPERLY IGNORED SUBSTANTIAL EVIDENCE IN THE RECORD SHOWING THAT THE CHARGE NURSES ARE STATUTORY SUPERVISORS

While the burden is on the employer to show supervisory status of its

employees, the evidence in the record, completely ignored by the Board, more than

meets this burden.  Contrary to the Board's argument, the record is replete with

evidence showing that the charge nurses hold the authority to engage in any one of

the 12 supervisory functions listed in section 2(11); that their exercise of such

authority is not of a merely routine or clerical nature, but requires the use of

independent judgment; and their authority is held "in the interest of the employer." The Board's argument focuses only on the first two prongs – i.e., the exercise of one of the twelve supervisory functions and the use of independent judgment.

In NLRB v. Kentucky River Cmty. Care, Inc., 532 U.S. 706, 721-22 (2001), the Supreme Court criticized and rejected the NLRB's ruling that nurses in a health care institution were not statutory supervisors since, in the Board's view, the authority they exercised in directing less-skilled employees was "ordinary professional or technical judgment" not sufficient to meet the statutory test requiring the utilization of independent judgment.  The Court rejected the Board's interpretation of the term "independent judgment" as being contradictory to both the text and structure of the NLRA as well as to the Court's ruling in NLRB v. Health Care & Ret. Corp. of America that "the test for supervisory status applies no differently to professionals than to other employees."  511 U.S. at 579-80.[1] Here, as shown below, the Board has once again refused to follow the law by arbitrarily failing to consider record evidence of the charge nurses' meeting the criteria set forth by section 2(11) and by failing to properly apply the three-factor

---

[1]  It should be noted that, here, as was the case in NLRB v. Health Care & Ret. Corp. of America, the charge nurses are, during a substantial portion of the day and workweek, the highest ranking  member of the Nursing Department on site at the Center, providing further evidence of their supervisory status. (Tr. 24-25, 375) (J.A. 0022-0023, 0237); see NLRB v. Health Care & Ret. Corp. of America, 511 U.S. at 575 (noting "[t]he staff nurses are the senior ranking employees on duty after 5 p.m. during the week and at all times on weekends …."). The same is true at the Center.  (Tr. 43-45, 368, 375) (J.A. 0036-0038, 0233, 0237)

test for supervisory status set forth in <u>Kentucky River</u>.  In fact, the Board relegates to a mere footnote in its Brief the issue of its improperly failing to consider evidence of supervisory authority exercised by charge nurses during the tenure of prior owners of the Greenville Center.  Respondent's Brief ("Resp't's Br.") at 32 n. 10.  The sole case the Board relies on for the proposition that past supervisory status is not determinative of whether an individual is considered a supervisor, <u>Passaic Daily News v. NLRB</u>, 736 F.2d 1543, 1550 (D.C. Cir. 1984), is inapposite. That case involved the supervisory status of an employee who served as the bureau chief of a newspaper.  Unlike here, in that case the Court found that while there was evidence that the employee had had supervisory responsibility at one time, he was <u>reassigned</u> to another position for approximately one year, and when he eventually returned to his old position as bureau chief, his job responsibilities had diminished.  Accordingly, at the time of the events leading to the petition in <u>Passaic Daily News</u>, the evidence showed that the employee, while he retained the title of bureau chief, no longer held supervisory authority.  For example, although he had previously had employees reporting to him and had authority to give such employees their work orders and evaluate their work, such authority was taken away from him and given to the managing editor and news editor.  <u>Id.</u> at 1546-1550.

Here, in contrast, there is not a shred of evidence in the record suggesting that the supervisory authority of charge nurses ever diminished.  None of their responsibilities have been taken away by Genesis, the current manager of the Greenville Center; instead, they have always maintained and exercised the authority to, among other things, discipline other employees, assign other employees and to responsibly direct their work.  Accordingly, the Board's failure to consider any evidence of supervisory authority exercised under the tenure of prior ownership was both arbitrary and improper and the Board's decision must be reversed and vacated.  See Cogburn Health Ctr., Inc. v. NLRB, 437 F.3d 1266, 1274-75 (D.C. Cir. 2006) (reversing Board's imposition of bargaining order because of Board's failure to credit employer's properly raised evidence of changed circumstances in its business operation between time of ALJ decision and NLRB's final disposition of case, noting "[t]he Board's rote treatment of [the employer's] evidence is entirely unconvincing."); see also Local Joint Exec. Bd. of Las Vegas v. NLRB, __ F.3d __, No. 10-72981, slip op. at 17428 (9th Cir. Sept. 13, 2011) (rejecting Board's decision as arbitrary and capricious where Board "continues to be unable to form a reasoned analysis in support of its ruling"); Healthcare Employees Union, Local 399, Affiliated with Service Employees Int'l Union, AFL-CIO v. NLRB, 463 F.3d 909, 918 (9th Cir. 2006) (holding that "substantial evidence" test used for reviewing decisions of NLRB requires a case-

by-case analysis and a review of the whole record and "requires a reviewing court

to 'take into account whatever in the record fairly detracts' from the Board's

conclusions.") (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488

(1951)).

> **1. The Board Ignored Substantial Evidence in the Record Showing that Charge Nurses Exercise the Authority to Discipline Subordinates and to Recommend Discipline in the Interest of the Center**

The Board relies heavily on Beverly Enters. Mass., Inc. v. NLRB, 165 F.3d

960 (D.C. Cir. 1999) and Oil Chem. and Atomic Workers v. NLRB, 445 F.2d 237

(D.C. Cir. 1971), to argue that the Center failed to come forth with tangible

examples demonstrating that the statutory elements of supervisory status have been

met. See Resp't's Br. at 18-20, 25-26.  To the contrary, the facts of these cases are

clearly distinguishable from this one.  As pointed out in the Center's Opening

Brief, in Beverly Enters. Mass., Inc. v. NLRB, this Court upheld the Board's

conclusion that a nursing home's LPN charge nurses were not statutory

supervisors, basing its holding on the fact that while the employer had instructed

its LPN charge nurses that they had "independent authority to discipline," the

record did not reveal any instances where a charge nurse exercised this authority.

Id. at 963-964.  In contrast to the situation in Beverly, where the record revealed

that the charge nurses consistently failed to exercise putative disciplinary authority

despite the opportunity to do so, the record here shows instances where the charge

7

nurses did in fact exercise their supervisory authority, thereby demonstrating that they had more than mere "paper authority" or a reportorial function.

Acting DON Donna Goulden testified based on personal knowledge that when she previously served as a charge nurse, it was explained to her that she was in charge of the employees serving underneath her, including the CNAs and medical technicians, and that she had every right to discipline them.  (Tr. 104-105) (J.A. 0072-0073)  Indeed, as pointed out in the Center's Opening Brief, the record contains numerous examples of disciplinary actions signed and issued by RN charge nurses, demonstrating that the Center's charge nurses have the authority and discretion to use their judgment to decide whether to initiate the disciplinary process – and have in fact exercised that authority.  See Er. Ex. 6 (J.A. 0250-0276); Opening Brief of Petitioner ("Pet'r's Br.") at 13-16.  In fact, as Ms. Goulden testified, charge nurses exercise discretion in deciding whether to initiate the disciplinary process based on their judgment regarding the severity of the incident in question.  (Tr. 79-80) (J.A. 0059-0060)  Thus, unlike in Beverly, the record in this case contains tangible examples of the exercise of supervisory authority by charge nurses.

Inexplicably, the Board fails to even mention in its Brief, much less attempt to deal with, the fact that there is record evidence of a charge nurse's authority to send an employee home as a disciplinary measure.   Ms. Goulden testified

regarding an instance where Charge Nurse Linda Rodriguez issued written

discipline to CNA Thomas Oh after he was found sleeping on the job.

Ms. Rodriguez's write-up, dated January 27, 2008, states: "I took him aside and

explained to him that he had to punch out and go home due to [his sleeping on the

job] …."  (Tr. 56-58; Er. Ex. 6) (J.A. 0041-0043; J.A. 0250-0276)

The Board makes no attempt whatsoever to distinguish this case from

NLRB v. Passavant Ret. and Health Care Ctr., 149 F.3d 243, 248 (3d Cir. 1998), a

case cited in the Center's Opening Brief, in which the Court of Appeals for the

Third Circuit held that nurses who sent employees home for committing flagrant

conduct were supervisors because their actions were disciplinary in nature.  The

Court found that the nurses exercised independent judgment because the decision

to send an employee home for misconduct required thought, and was not just an

obvious response.  Id. at 249.

The Passavant Court criticized the Board's position that sending an

employee home for flagrant misconduct as opposed to ordinary rule violations does

not confer supervisory status, stating "[w]e see little to commend a distinction

based on how fragrant the violation happens to be.  Here, this type of dismissal

could not be considered a routine or clerical function; it consists of a charge nurse

imposing her independent judgment upon, and exercising her authority over a

subordinate, however subtle or flagrant the violation."  Id.  In this case, as in

9

<u>Passavant</u>, Ms. Rodriguez, the charge nurse, had to use her independent judgment to decide the best course of action when she found Mr. Oh sleeping on the job. Because she made this decision independently, in the best interests of her employer, she exercised supervisory authority when she sent Mr. Oh home. (Tr. 56-58) (J.A. 0041-0043)

The situation here is also different from that in <u>Oil Chem. and Atomic Workers</u>, a case also cited in the Board's Brief where this Court upheld the Board's conclusion that the employer had failed to put forth tangible examples that would establish that its senior operators were supervisors. In that case, the testimony established that the senior operators had been informed by the plant manager that, in terms of issuing discipline to subordinate employees, the senior operators were to take no direct action themselves but were instead to call the plant manager, who would come to the plant immediately. 445 F.2d at 242. This Court noted that "while numerous allegations of supervisory authority have been made, the nearly total lack of evidence of authority actually exercised negates its existence." <u>Id.</u> at 243.

In contrast, as discussed above as well as in the Center's Opening Brief, unlike the situation in <u>Oil Chem. and Atomic Workers</u>, the record here is rich with instances of supervisory authority actually exercised by charge nurses, which evidence the Board improperly ignored. In contrast to <u>Oil Chem. and Atomic</u>

Workers, where the senior operators could not issue discipline on their own, the irrefutable evidence in the record here shows that charge nurses consistently exercise their authority to issue disciplinary actions on their own, without first checking with the DON.  (Tr. 56-58, 63-65, 201-203, Er. Ex. 6, pp. 6, 26) (J.A. 0041-0043, 0044-0046, 0136-0138; J.A. 0255, 0275)

Moreover, the Board ignored evidence that the Center has now, and has had in the past, a progressive disciplinary system in place.  The progressive disciplinary policy is included in the Employee Handbook and was explained to employees by Regional Human Resources Manager Cathy Cousineau in a meeting in October 2008.  (Tr. 303-304) (J.A. 0199-0200)  The situation here is thus distinguishable from that presented in Jochims v. NLRB, 480 F.3d 1161 (D.C. Cir. 2007), where this Court reversed the Board's decision that the charge nurses at a long term care facility were supervisors.  While in that case charge nurses had the authority to "write up" employees who violated work rules and such write-ups were placed in the employees' personnel files, such write-ups were not considered to be discipline.  Id. at 1169-70.

Here, in contrast, the uncontroverted evidence shows that charge nurses have the discretion to prepare formal disciplinary actions which they personally present to the employees *without* first checking with the DON.  They have presented disciplinary actions to employees with a union representative present, as required

by the current Collective Bargaining Agreement.  Indeed, in addition to the instance where she sent an employee home as a disciplinary measure for sleeping on the job, RN charge nurse Linda Rodriguez issued an employee warning on June 13, 2009 to CNA Benedicta Wolo  in the presence of her union representative for being "uncooperative."  (Tr. 63-65, Er. Ex. 6, p. 6) (J.A. 0044-0046; J.A. 0255)  CNA Wolo also received written discipline from RN charge nurse Nancy Gouin in March 2009.  (Er. Ex. 6, p. 26) (J.A. 0255, 0275)  Indeed, Ms. Gouin wrote "At this time this supervisor [meaning herself] declined any further attempt to reason with the issue" and it further reflects that Ms. Gouin was dealing directly with the Union representative (who was representing the CNA) in addressing the insubordination issues relating to refusal to provide resident care.  (Er. Ex. 6, p. 26) (J.A. 0255, 0275)

In its Brief, the Board, as did the Regional Director, attempts to discredit the testimony of Acting Director of Nursing Donna Goulden regarding the disciplinary write-ups presented by the Center at the NLRB hearing.   The Board argues that Ms. Goulden lacked personal knowledge as to the preparation of the write-ups. See Resp't's Br. at 32-33.  However, the Board misconstrues Ms. Goulden's testimony.  She testified, based on personal knowledge, that during her tenure as Acting Director of Nursing, no nurse has called her at home to ask whether they

12

should prepare a disciplinary warning for any employee.  (Tr. 100-101) (J.A. 0068-0069)

In fact, Ms. Goulden testified that the calls she receives at home, which only occur about once a week, deal with emergency or patient care situations having nothing to do with personnel issues.  (Tr. 191-93, 245-247) (J.A. 0126-0128, 0157-0159)  In providing examples of situations where she would be called at home, Ms. Goulden stated: "If the fire alarm goes off, myself or the Administrator has to be called.  An emergency.  If we, God forbid, have a missing resident, something like that, they'd have to call."  (Tr. 192) (J.A. 0127)  She further testified based on her personal knowledge that she has received written warnings from nurses <u>after</u> they have been prepared and given to the employees.  (Tr. 100-101) (J.A. 0068-0069) Ms. Goulden was asked on direct examination: "How frequently do they call you because two CNAs are not getting along, or some disciplinary issues that they're dealing with?"  (Tr. 192) (J.A. 0127)  She responded as follows:

> They try to deal with it on their own and I'll find out the next day.  <u>I actually, recently, haven't received any calls regarding people not getting along.  They deal with that themselves.  They either separate them, or do what they have to and I find out the next day when I come in.</u>

(Tr. 193) (J.A. 0128) (emphasis added)  Thus, it is clear from Ms. Goulden's testimony, which was improperly and arbitrarily ignored by the Board, that charge

13

nurses have acted independently in preparing and issuing disciplinary actions without first checking with management.[2]

Furthermore, Ms. Goulden testified regarding a document issued to a CNA by charge nurse Nancy Gouin dated April 29, 2009 called an "On-the-Job Training" form.  (Tr. 77-80, Er. Ex. 6, p. 16) (J.A. 0057-0060; J.A. 0265)  Ms. Goulden, in describing this form, testified based on her personal knowledge as Acting Director of Nursing (and previously as Assistant Director of Nursing), that Ms. Gouin had the option of whether to initiate the disciplinary process by issuing a formal disciplinary action or by simply giving the employee "on-the-job training."  (Tr. 79, 102) (J.A. 0059, 0070)  This is yet another tangible example of a charge nurse using independent judgment in deciding whether to initiate the disciplinary process that was completely and improperly ignored by the Board. Tangible examples such as this one go far beyond the "general assertions" found to be insufficient to establish supervisory authority by the Seventh Circuit Court of Appeals in NLRB v. ResCare, Inc., 705 F.2d 1461, 1467 (7th Cir. 1983), a pre-Kentucky River case cited by the Board in its Brief.  Resp't's Br. at 33-34.

---

[2]  Contrary to the Board's argument, the testimony of Charge Nurse Elizabeth Iwenekha does not controvert Ms. Goulden's testimony regarding the charge nurses' authority to discipline CNAs.  While she offered testimony as to the one written write-up she prepared (Tr. 350-351) (J.A. 0220-0221), she could not, of course, offer any testimony to refute the fact that other write-ups were prepared and issued by other charge nurses without the direction of the DON or ADON.

In addition, as pointed out in the Center's Opening Brief, Ms. Goulden testified from personal knowledge of situations where certified nursing assistants have had conflicts with each other on the "off shifts" (3-11 or 11-7). On one such occasion, when the RN charge nurse could not diffuse the issue, she contacted RN Charge Nurse Jean Austin, who was serving as the 11-7 shift supervisor, and Ms. Austin advised the CNA that she needed to move to a different nursing unit or go home.[3] The CNA chose to go home. None of this was reviewed with the Director of Nursing while it happened and she was not contacted at home. Rather, she only heard about the decision made by Ms. Austin the following day. (Tr. 194-196) (J.A. 0129-0131)

Thus, on the issue of disciplinary authority alone, the Center established the existence and exercise of supervisory authority by the charge nurses and, therefore, the Board's Decision must be reversed and vacated.

---

[3]  In deciding to tell the CNA to either leave the building or go to another assignment the nursing shift supervisor Austin was exercising her own judgment in making that decision and offering that choice. (Tr. 230-231) (J.A. 0155-0156) The Board improperly found that even when the RN Charge Nurses were serving as 3-11 p.m. or 11 p.m. – 7 a.m. supervisors, they were still not statutory supervisors. (Decision and Direction of Election at 20-22) (J.A. 0510-0512) This clearly was in error, as all of the charge nurses work in the capacity of shift supervisor from time to time and shift supervisors have the additional responsibility of supervising other charge nurses during their shift. (Tr. 25-30, 271-280; Er. Ex. 15) (J.A. 0023-0028, 0178-0187; J.A. 0383-0405)

## 2. Substantial Evidence in the Record, Ignored by the Board, Shows that Charge Nurses Responsibly Direct the Work of CNAs Using Independent Judgment

While admitting in its Brief that the RN charge nurses responsibly direct the work of CNAs by delegating tasks and ensuring that the CNAs are providing proper care to residents (Resp't's Br. at 20), the Board argues, astonishingly, that there is no evidence that the charge nurses exercise "independent judgment" in doing so. This argument ignores the uncontradicted evidence in the record demonstrating that the charge nurse job descriptions entered by the Center, which show numerous supervisory responsibilities, are consistent with what charge nurses actually do on a day-to-day basis, as admitted by charge nurse Elizabeth Iwenekha. (Tr. 122-123, 381-385) (J.A. 0076-0077, 0238-0242)

On the heels of the Kentucky River decision, the Board articulated its own set of rules for defining supervisors under the NLRA in Oakwood HealthCare, Inc., 348 NLRB 686 (2006). Yet, despite the fact that Oakwood is still binding precedent that the Board is required to follow, the Board essentially ignored the crux of Oakwood, both in its underlying Decision and in its Brief.

For example, in Oakwood, the Board defined "independent judgment" as recommending actions, forming opinions, or making evaluations, free from the control of others. Id. at 696. The Board made clear in Oakwood that independent judgment is lacking only if the employee's actions are "dictated or controlled by

16

detailed instructions" or "merely of a routine or clerical nature." Id. at 693.   Here,

the job responsibilities are clearly not "dictated or controlled by detailed

instructions" or "merely of a routine or clerical nature."   The job descriptions list

many responsibilities that require the use of independent judgment (see Er. Exs. 7

and 8, 20 and 21) (J.A. 0277-0293; J.A. 0440-0450), such as:

> 2. Assigns and supervises certified nursing assistants on the unit to include resident care being provided, activities and scheduled appointments.
>
> ….
>
> 4. Assumes independent responsibility for documenting disciplinary concerns for non-licensed personnel on designated shifts, including reprimands, oral and written warnings, and recommending the suspension or discharge of employees, …."
>
> 5.  Supervises and participates in, as necessary, the delivery of nourishments …

(Tr. 123 and Er. Ex. 8, p. 2) (J.A. 0077; J.A. 0288) (emphasis added)  As the

current charge nurse job description indicates, the position of charge nurse requires

"advanced training and broad nursing experience, including supervisory duties."

(Er. Ex. 21) (J.A. 0447-0450)  The job description also makes clear that the work

of a charge nurse requires "administrative ability, knowledge of training

techniques, ability to adapt techniques and procedures in accordance with unusual

situations, and the exercise of initiative and good judgment." Id. (J.A. 0447-0450)

(emphasis added)

Charge nurses, as part of their job duties also independently prepare performance appraisals of the CNAs under their supervision which are relied on heavily by the DON, who has very little first hand knowledge of the CNAs' performance.  (Tr. 145-150, 155-173) (J.A. 0085-0090, 0092-0110)  Beyond the descriptions, DON Donna Goulden testified regarding the <u>factors</u> that charge nurses take into consideration in using their independent judgment to decide, for example, whether to allow a CNA's request to leave work early in a non-emergency situation (<u>i.e.</u>, safety of the building and the number of other CNAs on duty), or to decide whether to send a CNA home as a result of an allegation that they have physically or verbally abused a resident (<u>i.e.</u>, by taking a statement from the resident, speaking with the CNA and deciding independently whether the incident is serious enough to send the employee home).  (Tr. 185-186, 201-203) (J.A. 0122-0123, 0136-0138)  Indeed, Ms. Goulden specifically testified that in a situation where a charge nurse suspects abuse, the charge nurse makes the decision to send the employee home pending an investigation <u>without</u> first checking with her.  (Tr. 247-48) (J.A. 0159-0160)

"Detailed instructions" do not control these types of in-the-moment decisions, nor can any of these decisions be fairly classified as "routine or clerical" in nature.  It appears that the current Board and Regional Director have wholly ignored the precedent of <u>Oakwood</u>, instead relying on cases that were decided

18

*prior* to <u>Oakwood</u> that hold employers to a different standard. This, alone, is an arbitrary and capricious use of the Board's power. Altogether, contrary to the Board's argument, there is more than sufficient record evidence showing that the charge nurses' exercise of supervisory authority is "not of a merely routine or clerical nature." 29 U.S.C. § 152(11).

Thus, in this case, as in <u>Evergreen New Hope Health & Rehab. Ctr. v. NLRB</u>, 65 Fed. Appx. 624, 626 (9th Cir. 2003), another case cited in the Center's Opening Brief that was completely ignored by the Board in its Brief, the charge nurses exercise independent judgment in supervising and disciplining nurse assistants, and are therefore supervisors under the Act. In this case, as in <u>Evergreen</u>, the charge nurses are, during the majority of each day, the highest ranking nursing employees on site at the Center, and "[t]he charge nurses direct certified nurse assistants who have substantially less training and authority." <u>Id;</u> <u>see Mid-America Health Care Found. v. NLRB</u>, 148 F.3d 638, 641 (6th Cir. 1998) (holding fact that employer's LPNs are highest ranking employees on duty on afternoon and evening shifts, and on these shifts a single LPN is responsible for supervising several assistants, indicated that NLRB's conclusion that charge nurses were not supervisors was not supported by substantial evidence). RN charge nurses make sure that the CNAs' tasks are completed and issue discipline when they are not completed, because the RNs are responsible and accountable to ensure

that CNAs do their job.  Indeed, there is record evidence showing that RN Charge

Nurse Melanie Champlin was specifically evaluated in her performance evaluation

on her "management skills," in addition to the specific supervisory responsibilities

listed in her job description, thus demonstrating that charge nurses are held

accountable for how well they manage the CNAs.  (Er. Ex. 8, p. 5) (J.A. 0291)

### 3.    The Board Ignored Substantial Evidence that the RN Charge Nurses Exercise Independent Judgment in Assigning the Work of CNAs

The Board's argument that the evidence fails to show that charge nurses

exercise independent judgment in assigning work to CNAs ignores, again, both the

clear precedent of <u>Oakwood</u> and the testimony of Director of Nursing Donna

Goulden regarding their assignment responsibilities.  In <u>Oakwood</u>, the Board

specifically defined the word "assign" as "the act of designating an employee to a

place (such as a location, department, or wing), appointing an employee to a time

(such as a shift or overtime period), or giving significant overall duties, i.e., tasks,

to an employee." <u>Oakwood</u>, 348 NLRB at 689.  Simply put, the Board has ignored

the clear and unequivocal evidence of assignment in this case under its own

<u>Oakwood</u> precedent.  <u>See Honeywell Int'l, Inc. v. NLRB</u>, 253 F.3d 119, 123 (D.C.

Cir. 2001) ("Without more, the Board's departure from precedent without a

reasoned analysis renders its decision arbitrary and capricious.").

Ms. Goulden specifically testified that charge nurses, while serving as shift supervisors, move CNAs from unit to unit based on resident care and coverage needs, thus plainly meeting the definition of assignment under <u>Oakwood</u>.  (Tr. 183-184) (J.A. 0120-0121)  Furthermore, the second and third shift RN supervisors are responsible for finding replacements when employees call out, and have the supervisory discretion to decide whether or not the nursing unit can operate without need for a replacement.  (<u>Id.</u>) (J.A. 0120-0121)  This is, yet again, consistent with the definition of assignment in <u>Oakwood</u>, where the NLRB found that "[t]he assignment of an employee to a <u>certain shift (e.g., night)</u> . . .  would generally qualify as 'assign' within our construction." (emphasis added). <u>Oakwood</u>, 348 NLRB at 649.

The example discussed by Ms. Goulden in which a CNA appealed a charge nurse's decision to deny the CNA's request to leave early does not, as the Board suggests, undermine the Center's argument that charge nurses have independent authority to make such decisions.  Resp't's Br. at 27.  The Board neglects to mention that, in this example, the charge nurse did not come to Ms. Goulden and ask whether she should grant or deny the employee's request to leave early; rather the charge nurse made the decision that the CNA could not be spared.  (Tr. 187) (J.A. 0124)  It was the CNA who appealed to Ms. Goulden, and Ms. Goulden supported the charge nurse's decision.  (<u>Id.</u>) (J.A. 0124)  In fact, Ms. Goulden also

21

testified, in response to a question from the Hearing Examiner, that there is no rule that employees cannot leave except for emergency or illness and that charge nurses have the authority, and indeed exercise the authority, to decide whether or not to let people leave early <u>without</u> first checking with her.  (Tr. 191) (J.A.0126)

Certainly, the mere fact that an employee chooses to appeal their charge nurse's decision to higher management cannot strip that charge nurse of her status as a statutory supervisor.  Most employers have a "chain of command" where decisions made by supervisors can be appealed to higher management.  If such an appeal were to be considered evidence of non-supervisory status, then it would follow that the only employees who could be considered supervisors would be those in the very highest level of management (the chief executive officer in some cases), which result would be absurd.

Here, while the Center does have a procedure for the charge nurses to follow when an employee calls out sick, for example, the charge nurses still have to use independent judgment in resolving the situation since if they are not able to fill a vacancy by calling a part-time or per diem employee, they must use their judgment to fill the vacancy with overtime, or may choose not to fill it at all.  (Tr. 227-228) (J.A. 0152-0153)  Thus, the fact that charge nurses exercise independent judgment in assigning CNAs provides additional evidence of the fact that they are supervisors under section 2(11).  <u>See</u> <u>Glenmark Assocs. v. NLRB</u>, 147 F.3d 333,

341 (4th Cir. 1998) (noting "[q]uite obviously many scheduling decisions made 'routinely' by the LPNs at [the nursing home] must require independent judgment. The Board mistakenly assumes that because there is an established procedure for handling a particular scheduling situation, nobody is required to think.").[4]

### III.  **CONCLUSION**

For all of the reasons set forth above as well as in the Center's Opening Brief, the National Labor Relations Board's Decision and Order finding that the Center violated Sections 8(a)(1) and (5) of the National Labor Relations Act and requiring the Center to cease and desist from certain conduct and to take certain remedial actions is not supported by substantial evidence and should be reversed and vacated.

WHEREFORE, the Center respectfully requests that the Court grant the Petition for Review, reverse and vacate the Board's Order dated April 13, 2011, deny the Board's Petition for Enforcement, and issue any other relief that this Court deems just and proper.

---

[4] In addition, while not dispositive of the issue of supervisory status, the secondary criteria pointed out by the Center also supports the fact that the charge nurses are supervisors.  As set forth above, the record evidence shows that the Center has established several of the primary factors indicating supervisory status exists, and secondary indicia, also improperly ignored by the Board (such as the fact that charge nurses prepare performance evaluations and authorize payment for CNAs when the time clock malfunctions), provides further support for this conclusion. See Pet'r's Br. at 49-50.

Dated: October 20, 2011          Respectfully submitted,


                                 _____/s/_____
                                 J. Michael McGuire
                                 Darryl G. McCallum
                                 SHAWE & ROSENTHAL, LLP
                                 20 South Charles St., 11th Fl.
                                 Baltimore, MD  21201
                                 (410) 752-1040 phone
                                 (410) 752-8861 facsimile

                                 *Counsel for Petitioner*

## **CERTIFICATE OF COMPLIANCE**

This brief is submitted in compliance with Circuit Rule 32(a)(3)(C). The brief contains 5,697 words, excluding the table of contents, table of authorities, and addendum.  This word count was generated by Microsoft Word 2003.

/s/
J. Michael McGuire (admitted *pro hac vice*)
Darryl G. McCallum
Shawe & Rosenthal, LLP
20 S. Charles St., 11th FL.
Baltimore, MD 21201
(410) 752-1040

October 20, 2011

**<u>ADDENDUM</u>**

# TABLE OF CONTENTS

29 U.S.C. § 152(11) …………………………………………………28

29 U.S.C. § 152

When used in this subchapter –

….

(11) The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the Final Reply Brief of Petitioner and the

Addendum thereto was electronically filed and thereby served this 20th day of

October, 2011 upon the following:

> Julie Broido
> Linda Dreeben
> Milakshmi Rajapakse
> Deputy Associate General Counsel
> National Labor Relations Board
> 1099 14th Street, N.W.
> Washington, DC  20570-0001

I further certify that I will file paper copies of the same by first class mail within two

business days.

_____/s/_____<br>Darryl G. McCallum

#281077

29